IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| **TERRY WILLIAMS**, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>                    v.<br><br>**PRIMARY UTILITY SERVICES, LLC,**<br><br>    Defendant. | Civil Action No.: _____<br><br><br>**COLLECTIVE ACTION COMPLAINT** |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.   Plaintiff, Terry Williams ("Williams" or "Plaintiff"), on behalf of himself and all others similarly situated, brings this lawsuit to recover unpaid overtime wages and other damages from Defendant, Primary Utility Services, LLC ("PUS" or "Defendant") under the Fair Labor Standards Act ("FLSA").  *See* 29 U.S.C. § 201 *et seq*.

2.   Williams worked for the Defendant as an Equipment Operator from approximately March 1, 2022 until July 14, 2022.

3.   Williams, and the Putative Collective Action Members (as defined below), regularly worked in excess of 40 hours per workweek.

4.   Williams, and the Putative Collective Action Members, did not receive sufficient overtime compensation for the hours worked in excess of 40 hours in a single workweek for two separate reasons.

5.   Defendant failed to include all forms of remuneration in the calculation of

Plaintiff's regular rate, and therefore did not pay the appropriate overtime rate to Plaintiff and the Putative Collective Action Members.

6. Defendant further failed to include all hours worked by Plaintiff and the Putative Collective Action Members when calculating the total number of overtime hours for which Plaintiff and the Putative Collective Action Members should be compensated during any given workweek.

7. Defendant paid Plaintiff and the Putative Collective Action Members an hourly rate.

8. Defendant cannot meet the requirements of the possible FLSA overtime exemptions because PUS did not pay Williams, or the Putative Collective Action Members, on a "salary basis."

9. Because the salary basis test is a prerequisite to any potentially applicable exemption (administrative, executive, professional, or highly compensated) to the FLSA's overtime requirements, Plaintiff, and Putative Collective Action Members, are non-exempt employees who are entitled to overtime for every hour above 40 worked in a week.

10. Defendant, PUS, is therefore liable to Williams, and the Putative Collective Action Members, for the *per se* violation of the FLSA.

11. This collective action seeks to recover the unpaid overtime wages, and other damages, owed to Williams and the Putative Collective Action Members.

**JURISDICTION & VENUE**

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court also has supplemental jurisdiction over any state law sub-classes

pursuant to 28 U.S.C. § 1367.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this District.

15. Defendant Primary Utility Services, LLC, has its principal place of business at 12308 FM 179, Wolfforth, Texas 79382.

16. Defendant conducts substantial business operations in this District.

17. Defendant maintains a registered agent for service of process in Texas located at 2556 CR 317, Snyder, Texas 79549, as indicated by the Texas Secretary of State business entity database.

**PARTIES**

18. Terry Williams currently resides in Hockley County, Texas.

19. Williams provided services for PUS from approximately March 1, 2022 until July 14, 2022.

20. Defendant classified Williams as a W2 employee.

21. Williams's consent to join this lawsuit is being filed with the Court. *See* Exhibit 1.

22. Williams worked as an Equipment Operator for Defendant.

23. Throughout his employment with the Defendant, Williams was paid an hourly rate for hours worked.

24. In addition to his hourly rate, PUS paid Williams $90.00 per day, but failed to include this compensation in the regular rate of pay, and therefore illegally reduced the overtime rate Plaintiff was entitled to receive under the FLSA.

25. Williams was not compensated for travel time, which was all part of the normal workday, and which lasted approximately five hours each day that he worked, thereby

miscalculating the total number of overtime hours for which Williams should have received overtime premium compensation during each workweek.

26. PUS paid numerous other workers according to its illegal pay scheme.

27. Williams brings this action on behalf of himself, and all other similarly situated employees, who worked more than 40 hours in any given workweek and who did not receive the proper overtime compensation based on PUS's illegal compensation scheme.

28. Williams and the Putative Collective Action Members regularly worked more than 40 hours each week.

29. Defendant failed to pay these employees the appropriate overtime rate for the total overtime hours worked during each workweek.

30. The similarly situated workers impacted by PUS's illegal pay scheme should be notified of this action and given the opportunity to join the lawsuit pursuant to 29 U.S.C. § 216(b).

31. The similarly situated employees, or Putative Collective Action Members, sought to be certified is defined as follows:

> **All of Primary Utility Services, LLC's hourly paid employees who (1) worked in excess of 40 hours in any workweek, and whose per diem pay was excluded from the overtime pay calculations and/or (2) were denied pay for all hours worked during any workweek, including compensable travel time, at any time during the past three (3) years (the "Putative Collective Action Members").**

32. The Putative Collective Action Members are easily ascertainable from the business and personnel records maintained by Defendant.

## **COVERAGE UNDER THE FLSA**

33. At all relevant times, PUS has been an employer within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

34. At all relevant times, PUS has been an enterprise within the meaning of Section

3(r) of the FLSA.  29 U.S.C. § 203(r).

35. At all relevant times, PUS has been an enterprise engaged in commerce, or in the production of goods for commerce, within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

36. PUS has, and had, employees engaged in commerce, or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce.

37. At all relevant times, Defendant has had an annual gross volume of sales made, or business done, of not less than $500,000.

38. At all relevant times, Williams and the Putative Collective Action Members were engaged in commerce or in the production of goods for commerce.

39. Defendants treated Williams and the Putative Collective Action Members as employees and uniformly dictated the pay practices which applied to them.

40. Defendant's pay scheme, depriving Williams, and the Putative Collective Action Members, of sufficient overtime premium compensation for weeks in which they worked over 40 hours is, in and of itself, a violation of the FLSA.  29 U.S.C. § 207(a) & (e).

## FACTUAL ALLEGATIONS

41. Defendant PUS provides workers and services to "electrical power providers throughout West Texas." *See* https://primaryus.com/ (Last visited June 27, 2023).

42. To provide services, Defendant hires personnel (similar to Williams and the Putative Collective Action Members) to work on Defendant's behalf.

43. Plaintiff was employed as an Equipment Operator from approximately March 1,

2022 until July 14, 2022.

44. As an Equipment Operator, Plaintiff's primary job duties included operating a backhoe and assisting with the construction of a utility line by hauling and setting utility posts, attaching cross arms and ground wires and various similar related tasks.

45. PUS employed Plaintiff as a full-time employee.

46. PUS issues the paychecks and other forms of compensation and reimbursements to Plaintiff.

47. PUS is responsible for the employer's share of taxes and tax obligations for Plaintiff.

48. PUS did not guarantee Plaintiff a set number of hours each week.

49. During the relevant period, Plaintiff worked for Defendant in excess of 40 hours on numerous occasions. For example, during the pay periods ending June 19, 2022 and July 3, 2022, Plaintiff worked more than 97.5 and 102.0 hours, respectively, not even including the additional five hours each day he spent traveling to and from job sites after reporting to work.

50. During the relevant period, Plaintiff was paid an hourly rate for the hours worked.

51. PUS cannot satisfy its burden to prove that the compensation paid to Plaintiff satisfies the salary basis test, therefore no FLSA exemption can apply to Plaintiff.

52. Plaintiff was not exempt from overtime.

53. Plaintiff often worked more than 10 hours per day, for five (or more) days per week.

54. Defendant knew Plaintiff regularly worked in excess of 40 hours in numerous workweeks.

55. Defendant uniformly failed to pay Plaintiff sufficient, properly calculated, overtime compensation for the hours he worked in excess of 40 hours in a single workweek.

56. Defendant paid Plaintiff $90.00 per day and labeled such payment a "Long Range Per Diem".

57. The daily payments did not compensate Plaintiff for any business-related expenses, such as travel or food, and were not the "actual or reasonably approximate amount" of any actual expenses that Plaintiff incurred for the benefit of his employer. *See* 29 C.F.R. § 778.217(b). In fact, Plaintiff drove a company owned truck and was given a gas card to purchase fuel. These facts also apply to the Putative Collection Action Members.

58. Plaintiff was required to meet at the Defendant's facility in Wolfforth, Texas each morning, check in with his supervisor, load up tools and equipment, and drive a company vehicle to the jobsite south of Midland, Texas, over two hours away. Plaintiff was required to transport other PUS employees as part of a crew to the jobsite south of Midland, Texas. Several other groups of crew members drove separate company vehicles.

59. Plaintiff was provided with a gas card in order to pay for fuel needed for the commute and never paid "out-of-pocket" for fuel.

60. Plaintiff traveled to and from the Defendant's facility everyday and did not stay in hotels or other accommodations away from home during the performance of his duties.

61. Plaintiff was required to return to Defendant's facility at the end of his work shift, another commute in excess of two hours, and he returned to his home from the facility after completing any tasks required at the end of the day. During the daily drive, Plaintiff transported other employees at the request of PUS.

62. In order to qualify to receive the per diem payment, Plaintiff was required to "clock" 8-10 hours during his workday. The per diem was tied to the hours worked and is therefore per se wages. As wages, the per diem payments should have been included in the total

remuneration when calculating his regular rate for the purpose of assessing the proper overtime premium that Plaintiff was owed.

63. Plaintiff was required to work "off-the-clock" hours every day that he was assigned to the Midland jobsites.

64. Plaintiff was required to report to Defendant's facility every morning to gather tools and equipment, to receive instructions, and to perform tasks prior to departing for the worksite.

65. Plaintiff was required to commute to the worksite in a company vehicle.

66. Plaintiff was required to return to Defendant's facility, in the company vehicle, at the end of his shift to drop off tools and equipment prior to returning to his home in his personal vehicle.

67. Plaintiff's roundtrip commute from the facility to the jobsite and back again was in excess of five hours every day.

68. Plaintiff's roundtrip commute from the facility to the jobsite and back again was compensable worktime and must be counted as hours worked.  29 C.F.R. § 785.38.

69. Defendant only compensated Plaintiff for the time spent at the jobsite each day that Plaintiff worked and did not incorporate the compensable travel time in the calculation of Plaintiff's overtime hours each week.

70. Defendant knew, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

71. During the last three years, Defendant employed at least 100 other employees and paid them in a similar fashion.

72. The overtime owed to Plaintiff will be calculated using the Defendants' records.

73. Plaintiff sustained damages arising out of Defendant's illegal and uniform

compensation policy.

74. Defendant is liable under the FLSA for failing to pay sufficient overtime to Plaintiff.

75. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff. Defendant's conduct was also done in reckless disregard for its duty to comply with the law.

76. Defendant was aware, or should have been aware, that the FLSA required it to pay Plaintiff overtime compensation for all hours worked in excess of 40 hours per workweek and based on a regular rate of pay that included all remuneration paid to Plaintiff during each workweek.

## COLLECTIVE ACTION ALLEGATIONS

77. Plaintiff brings this claim as a collective action under the FLSA.

78. Based on his experiences with Defendant, Plaintiff is aware that Defendant's illegal and unlawful practices and/or pay policies were imposed on the Putative Collective Action Members.

79. Plaintiff's experiences are typical of the experiences of the Putative Collective Action Members.

80. Plaintiff has no interest contrary to, or in conflict with, the Putative Collective Action Members that would prevent collective treatment.

81. The Putative Collective Action Members are similarly situated to Plaintiff in all relevant respects.

82. The Putative Collective Action Members were victimized by Defendant's pattern,

practice, and/or policy which was a willful violation of the FLSA.

83. To provide services, Defendant hires personnel (similar to Williams and the Putative Collective Action Members) to work on their behalf.

84. PUS employed Putative Collective Action Members as full-time employees.

85. PUS issues the paychecks and other forms of compensation and reimbursements to Putative Collective Action Members.

86. PUS is responsible for the employer's share of taxes and tax obligations for Putative Collective Action Members.

87. PUS did not guarantee Putative Collective Action Members a set number of hours each week.

88. During the relevant period, Putative Collective Action Members worked for Defendant in excess of 40 hours on numerous occasions.

89. During the relevant period, Putative Collective Action Members were paid an hourly rate for the hours worked, however Defendant wrongly denied Putative Collective Action Members sufficient overtime premium compensation they deserved for hours worked in excess of 40 in any workweek based on two issues discussed more fully below.

90. PUS cannot satisfy its burden to prove that the compensation paid to Putative Collective Action Members satisfies the salary basis test, therefore no FLSA exemption can apply.

91. Putative Collective Action Members often worked more than 10 hours per day, for five (or more) days per week.

92. Defendant knew Putative Collective Action Members regularly worked in excess of 40 hours in numerous workweeks.

93. Defendant uniformly failed to pay Putative Collective Action Members sufficient

overtime compensation for the hours they worked in excess of 40 hours in a single workweek.

94. Putative Collective Action Members were not exempt from overtime.

95. Defendant uniformly failed to pay Putative Collective Action Members sufficient, properly calculated, overtime compensation for the hours they worked in excess of 40 hours in a single workweek.

96. Defendant paid Putative Collective Action Members a daily per diem.

97. The per diem payments did not compensate Putative Collective Action Members for expenses related to travel and were not the "actual or reasonably approximate amount" of any expenses that Putative Collective Action Members incurred for the benefit of their employer. *See* 29 C.F.R. § 778.217(b).

98. Putative Collective Action Members were required to meet at the Defendant's facility in Wolfforth, Texas each morning, load up tools and equipment, and drive a company vehicle to the jobsite south of Midland, Texas, over two hours away.

99. Putative Collective Action Members were provided with a gas card in order to pay for fuel needed for the commute and never they paid "out-of-pocket" for fuel.

100. Putative Collective Action Members traveled to and from the Defendant's facility every day and did not stay in hotels or other accommodations away from home during the performance of their duties.

101. Putative Collective Action Members were required to return Defendant's facility at the end of the work shift, another commute in excess of two hours, and they returned home from the facility after completing any tasks required at the end of the day.

102. In order to qualify to receive the per diem payment, Putative Collective Action Members were required to "clock" 8-10 hours during the workday. Because the per diem was thus

tied to the hours worked, it was *per se* wages and the per diem should have been included in the total remuneration when calculating the regular rate of pay for the purposes of assessing the proper overtime premium that Putative Collective Action Members were owed.

103. Putative Collective Action Members were required to work "off-the-clock" hours every day.

104. Putative Collective Action Members were required to report to Defendant's facility every morning to gather tools and equipment, to receive instructions, and to perform tasks prior to departing for the worksite.

105. Putative Collective Action Members were required to commute to the worksite in a company vehicle.

106. Putative Collective Action Members were required to return to Defendant's facility, in the company vehicle, at the end of the shift to drop off tools and equipment prior to returning home in personal vehicles.

107. Putative Collective Action Members' roundtrip commute from the facility to the jobsite, and back again, was in excess of five hours every day.

108. Putative Collective Action Members' roundtrip commute from the facility to the jobsite and back again was compensable worktime and must be counted as hours worked. 29 C.F.R. § 785.38.

109. Defendant only compensated Putative Collective Action Members for the time spent at the jobsite each day that Putative Collective Action Members worked and did not incorporate the compensable travel time in the calculation of Putative Collective Action Members' overtime hours each week.

110. Defendants knew, or showed reckless disregard for, whether the conduct described

in this Complaint violated the FLSA.

111. During the last three years, Defendant employed at least 20 other employees and paid them in a similar fashion.

112. During the last three years, Defendant employed at least 50 other employees and paid them in a similar fashion.

113. During the last three years, Defendant employed at least 100 other employees and paid them in a similar fashion.

114. The overtime owed to Putative Collective Action Members will be calculated using the Defendants' records.

115. Putative Collective Action Members sustained damages arising out of Defendant's illegal and uniform compensation policy.

116. Defendant is liable under the FLSA for failing to pay sufficient overtime to Putative Collective Action Members.

117. As part of its regular business practices, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Putative Collective Action Members. Defendant's conduct was also done in reckless disregard for its duty to comply with the law.

118. Defendant was aware, or should have been aware, that the FLSA required it to pay Putative Collective Action Members overtime compensation for all hours worked in excess of 40 hours per workweek and based on a regular rate of pay that included all remuneration paid to Plaintiff during each workweek.

119. A collective action is superior to other available means for fair, efficient, and consistent adjudication of the lawsuit.

120. Absent a collective action, many of the Putative Collective Action Members would not obtain redress for their injuries, and Defendant would reap the unjust benefits of violating the FLSA.

121. Further, even if some of the Putative Collective Action Members could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system.

122. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Collective Action Members, as well as provide judicial consistency.

123. The questions of law and fact that are common to each Putative Collective Action Member predominate over any questions affecting solely the individual members.

124. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

125. Even if the issue of damages were somewhat individualized in character, the damages can be calculated by reference to Defendant's records, and there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

126. There are many similarly situated Putative Collective Action Members who have been denied, refused, or not paid overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

127. The notice should be sent to the Putative Collective Action Members pursuant to 29 U.S.C. § 216(b).

128. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA
## IMPROPER CALCULATION OF REGULAR RATE

129. Plaintiff realleges and incorporates by reference all allegations in preceding paragraphs.

130. Plaintiff brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

131. Defendant violated, and continues violating, the FLSA by failing to pay Plaintiff and the Putative Collective Action Members sufficient, properly calculated, overtime compensation.

132. Plaintiff and the Putative Collective Action Members were Defendant's employees for purposes of the FLSA overtime requirements.

133. Defendant was Plaintiff's, and the Putative Collective Action Members', employer under the FLSA. Defendant suffered or permitted Williams and the Putative Collective Action Members to work for, or on, its behalf during the relevant period.

134. Because the salary basis test is a prerequisite to any white-collar exemption of the FLSA's overtime requirements, PUS cannot satisfy its burden to apply any potentially applicable overtime exemption.

135. Plaintiff and the Putative Collective Action Members are, and were, nonexempt hourly paid employees entitled to overtime premium compensation.

136. Defendant failed to pay Plaintiff and the Putative Collective Action Members sufficient, properly calculated, overtime premium compensation as required by the FLSA.

137. The overtime compensation owed to Plaintiff and the Putative Collective Action Members is equal to one-and-one-half times the "regular rate" of pay for hours worked in excess of 40 hours in a workweek. 29 U.S.C. § 207(a)(1).

138. The FLSA defines "regular rate" of pay as including "all renumeration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e).

139. For the purposes of including or excluding per diem payments, the Department of Labor ("DOL") Regulations interpreting the FLSA state: "only the actual or reasonably approximate amount of the expense is excludable from the regular rate." 29 C.F.R. § 778.217.

140. The per diem paid to Plaintiff and the Putative Collective Action Members did not, and was never intended to, reimburse them for the actual or reasonably approximate expenses incurred for the benefit of their employer.

141. Rather, the per diem was tied to the hours worked, was *per se* wages, and the per diem payments should have been included in the total remuneration paid to Plaintiff and the Putative Collective Action Members when calculating the regular rate of pay for the purposes of assessing the proper overtime premium compensation to which they were legally entitled.

142. Defendant knowingly, willfully, or in reckless disregard, carried out this illegal pattern or practice of failing to pay Plaintiff and the Putative Collective Action Members overtime compensation.

143. Defendant's failure to pay overtime compensation to Plaintiff and the Putative Collective Action Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

144. Accordingly, Plaintiff and the Putative Collective Action Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their hourly rate of pay, plus liquidated damages, attorney's fees, and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FLSA
## "OFF-THE-CLOCK" HOURS WORKED

145. Plaintiff realleges and incorporates by reference all allegations in preceding paragraphs.

146. Plaintiff brings his FLSA claim as a collective action under 29 U.S.C. § 216(b).

147. Defendant violated, and continues violating, the FLSA by failing to pay Plaintiff and the Putative Collective Action Members sufficient, properly calculated, overtime compensation.

148. Plaintiff and the Putative Collective Action Members were Defendant's employees for purposes of the FLSA overtime requirements.

149. Defendant was Plaintiff's, and the Putative Collective Action Members', employer under the FLSA. Defendant suffered or permitted Williams and the Putative Collective Action Members to work for, or on, its behalf during the relevant period.

150. Because the salary basis test is a prerequisite to any white-collar exemption of the FLSA's overtime requirements, PUS cannot satisfy its burden to apply any potentially applicable overtime exemption.

151. Plaintiff and the Putative Collective Action Members are, and were, nonexempt hourly paid employees entitled to overtime premium compensation.

152. Defendant failed to pay Plaintiff and the Putative Collective Action Members for all hours worked in a workweek as required by the FLSA.

153. Plaintiff and the Putative Collective Action Members were only compensated from the time when their day "started" at the jobsite until the day "ended" at the jobsite, and their commute to and from the jobsite was not included as part of the hours worked per day.

154. Plaintiff was required to report to Defendant's facility every morning to gather tools and equipment, to receive instructions, and to perform tasks prior to departing for the worksite.

155. Plaintiff and the Putative Collective Action Members were required to travel to the worksite in a company vehicle after reporting to the company in Lubbock, Texas and starting their workday.

156. Plaintiff and the Putative Collective Action Members were required to return to Defendant's facility in Lubbock, Texas, in the company vehicle, at the end of his shift to drop off tools and equipment prior to returning to his home in his personal vehicle.

157. The roundtrip commute from the facility to the jobsite and back again was in excess of five hours every day he worked at the Midland, Texas jobsite.

158. The roundtrip travel time from the PUS facility in Lubbock, Texas to the jobsite in Midland, Texas and back again was compensable worktime and must be counted as hours worked. 29 C.F.R. § 785.38.

159. Defendant only compensated Plaintiff and the Putative Collective Action Members for the time spent at the jobsite each day that Plaintiff worked and did not incorporate the compensable travel time in the calculation of Plaintiff's overtime hours each week.

160. The commute time amounts to "off-the-clock" work performed by Plaintiff and the Putative Collective Action Members for which they were not properly compensated.

161. Defendant knowingly, willfully, or in reckless disregard, carried out this illegal pattern or practice of failing to pay Plaintiff and the Putative Collective Action Members overtime compensation.

162. Defendant's failure to pay overtime compensation to Plaintiff and the Putative Collective Action Members was neither reasonable, nor was the decision not to pay overtime made

in good faith.

163. Accordingly, Plaintiff and the Putative Collective Action Members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their hourly rate of pay, plus liquidated damages, attorney's fees, and costs.

## **PRAYER**

164. WHEREFORE, Plaintiff Terry Williams, individually, and on behalf of the Putative Collective Action Members, demands judgment against Defendant and respectfully requests that this Honorable Court grant the following relief:

   a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the Putative Collective Action Members to permit them to join this action by filing a written notice of consent;

   b. A judgment against Defendant awarding Plaintiff and the Putative Collective Action Members the unpaid overtime compensation owed to them and an additional, equal amount, as liquidated damages;

   c. Declaratory judgement that the practices complained of in this Complaint are unlawful under the FLSA;

   d. An Order awarding attorneys' fees, costs, and expenses;

   e. Pre- and post-judgment interest at the highest applicable rates; and

   f. Such other and further relief as may be necessary and appropriate under applicable law and in the Court's discretion.

Respectfully submitted,

By: */s/ Matthew S. Yezierksi*
Matthew S. Yezierski
Texas Bar No. 24076989
matt@mcdonaldworley.com
Gabriel A. Assaad
Texas Bar No. 24076189
gassaad@mcdonaldworley.com
McDONALD WORLEY, P.C.
1770 St. James St., Suite 100
Houston, TX 77056
(713) 523-5500 – telephone
(713) 523-5501 – facsimile

Galvin Kennedy
Federal Bar No. 20791
Texas State Bar No. 00796870
Galvin@KennedyAttorney.com
KENNEDY LAW FIRM, LLP
2925 Richmond Ave., Ste. 1200
Houston, TX 77098
(713) 425-6445 - telephone
(888) 389-9317 - facsimile

**ATTORNEYS FOR PLAINTIFF**